IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EILEEN G. RUDOLPH,** | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-0805 |
| | ) |
| **JO ANNE B. BARNHART,** | ) Electronically Filed |
| Commissioner of Social Security, | ) |
|     Defendant. | ) |

MEMORANDUM OPINION

**December 12, 2005**

    I.    Introduction

Plaintiff Eileen G. Rudolph brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under title II of the Act.  Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") decision, the memoranda of the parties, and the entire record, the Court finds that the ALJ relied on substantial evidence to conclude that plaintiff's medical conditions do not prevent her from performing her past relevant work.  The Court therefore will grant the Commissioner's motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment in favor of the Commissioner.

## II. Procedural History

Plaintiff filed an application for DIB on April 28, 2003, claiming disability, beginning August 15, 2002, as a result of back and knee pain. R.15,61.  She claims that she first injured her knee in 1970 and first injured her back in January 1993. R.61,68.  Plaintiff suffers from degenerative disc and joint disease and is obese. R.15.  After her claim was denied at the administrative level on July 24, 2003, plaintiff requested a hearing.  Plaintiff, represented by an individual that is not an attorney, appeared and testified at her hearing on November 3, 2004 before ALJ Elliott Bunce.  Joseph J. Kuhar, a vocational expert ("VE"), also testified.

In a decision dated December 16, 2004, the ALJ found that plaintiff had degenerative disc and joint disease and is obese, which are severe impairments based on 20 C.F.R. § 404.1520(b), but none of these impairments meet or medically equal one of the listed impairments under 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 3. R.15, 16.  The ALJ determined that plaintiff is capable of performing her past relevant work, and therefore the ALJ concluded that plaintiff is "not disabled." R.18.

Plaintiff sought review of the ALJ's decision and the Appeals Council denied plaintiff's request for review.  Plaintiff timely commenced this action, which is now before this Court on the cross motions for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure.

## III. Statement of the Case

### A. Factual/Medical Background

Plaintiff was 57 years old at the time of the hearing and a high school graduate. R.292. Plaintiff previously worked as an assembler, care giver and as a dishwasher at McDonald's restaurant. R.293.  Plaintiff alleged that she became disabled on August 15, 2002 when she fell

down a flight of steps. R.293, 302. She immediately sought emergency room treatment because of back pain and was hospitalized at Trumbull Memorial Hospital. R.114-16. X-rays for fractures were negative but revealed spondylosis of the L5-S1 level. R.121.

On May 12, 2003, Gus Kostas, Jr., M.S., C.R.N.P. reported that plaintiff suffered from a variety of conditions including obesity, anxiety and depression, osteoporosis, osteoarhritis, hypercholesterolemia, and that she had a history of arthroscopic knee surgery in 1986 and 1987. R. 154.

Dr. Gerald Dickson, a chiropractor, treated plaintiff from April 2003 to May 2003. At the request of plaintiff's disability claims adjudicator, Dr. Dickson provided a report of plaintiff's visits. Dr. Dickson determined that plaintiff suffered from right gluteal weakness. R.160. Dr. Dickson noted that plaintiff suffered from a loss of sensation at L5-S1 and recommended chiropractic treatment. R.160,161. After treatment, plaintiff's response was favorable and Dr. Dickson found that plaintiff's condition improved. R.163. Dr. Dickson limited plaintiff to standing and walking for four hours a day and only limited sitting to 6 hours. R.164. Dr. Dickson also limited plaintiff to lifting 20 pounds frequently and 25 pounds occasionally. R.164.

In September 2003, Brian Shannon, M.D. took x-rays of plaintiff's shoulder which indicated degenerative joint disease, but noted that plaintiff was in no "apparent" distress. R.194-95. To help with plaintiff's discomfort, Dr. Shannon administered shoulder injections and prescribed Naprosyn, an anti-inflammatory. R.195. Plaintiff reported improvement at her October 2003 follow-up visit and Dr. Shannon prescribed physical therapy for her shoulder. R.193. One month later, plaintiff told Dr. Shannon that the physical therapy was working for her. R.192.

Also, in September 2003, plaintiff's primary care physician, Scott Morgan, M.D., completed an American General Life and Accident Insurance Company form. R.251-53. Dr. Morgan reviewed plaintiff's x-rays and concluded that plaintiff could not work more than 20 to 25 hours a week due to the pain in her right shoulder. R.224. Dr. Morgan limited plaintiff to lifting no more than 10 pounds, restricted her from overhead lifting and found plaintiff "incapable of minimal (sedentary) activity." R.223.

In December 2003, plaintiff reported to Dr. Shannon an 80% to 90% improvement in her condition. R.191. In January 2004, plaintiff told Dr. Shannon that she felt reoccurring pain in her right shoulder but was generally doing well. R.190. Dr. Shannon requested an MRI of plaintiff's right shoulder which revealed a rotator cuff tear. R.202. Dr. Shannon discussed the following treatment options with plaintiff: 1) do nothing; 2) physical therapy; 3) anti-inflammatories and joint injections; 4) surgery to repair her rotator cuff tear. R.189. Plaintiff consented to an operation. R.189.

On February 23, 2004, Dr. Shannon performed the rotator cuff operation and saw plaintiff six weeks later for a post-surgery checkup. R.186,183. On March 10, 2004, plaintiff complained of pain when she rolled onto her shoulder. R.184. In April 2004, plaintiff told Dr. Shannon that her right shoulder "aches quite a bit, but she has been doing the passive motion testing and has been taking the Naprosyn as instructed." R. 183. Plaintiff also reported pain in her *left* knee. R.183. Within a month, plaintiff fell and visited Dr. Shannon complaining of pain 10 out of a scale of 10 in her *right* knee. R.227. Dr. Shannon noted that she had full painless range of motion in her *left* knee. R.227. In May 2004, plaintiff later told the doctor that her *left* knee was doing better, even though she did not regularly wear the knee immobilizer. R.226. By June 2004,

4

plaintiff told Dr. Shannon that she was doing well and Dr. Shannon requested her to return only on an as-needed basis. R.255. After a few followup visits, Dr. Shannon performed a *right* knee arthroplasty on plaintiff in February 2005. R.278.

In May 2004, Jerome Bonier, D.O. examined plaintiff and reviewed medical records (without the aid of x-rays of the lumbar spine) to report to the Bureau of Disability Determination. R.214. Plaintiff complained of back and knee pain but did not mention any shoulder problems. R.214. Dr. Bonier concluded that plaintiff had severe post traumatic osteoarthritis of her right knee and chronic low back syndrome, without a herniated disc. R.215. Dr. Bonier further opined that plaintiff should continue to treat with Dr. Shannon for her right knee and will probably require total knee arthroplasty, but that she does not require any treatment for the lumbar spine. Dr. Bonier cleared her to work in a range of light work that did not involve standing more than 2 hours or work that involved stooping, crouching, or crawling. R.217. Finally, and notably, Dr. Bonier stated that plaintiff suffered from some symptom magnification. R. 215.

### B. The ALJ's Findings

The ALJ made the following specific findings:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in § 216(i) of the Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc and joint disease and obesity are severe impairments, based on the requirements in the Regulations (20 CFR §§ 404.1520, 416.920).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Part 404, 20 CFR.

5.  The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the residual functional capacity to perform work that does not require: lifting more than 10 pounds frequently or 20 pounds occasionally; or standing more than two hours in an eight-hour day; or any overhead work.

7.  The claimant's past relevant work as assembler did not require the performance of work-related activities precluded by her residual functional capacity.

8.  The claimant's medically-determinable degenerative disc and joint disease and obesity do not prevent the claimant from performing her past relevant work.

9.  The claimant was not under a disability, as defined by the Act, at any time through the date of this decision (20 CFR §§ 404.1520(f), 416.920(f)).

**IV.  Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid

interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free

to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. §

>404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, she will be deemed disabled where she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, plaintiff first must demonstrate the existence of a medically determinable disability that precludes her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that she is unable to resume her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed

Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c) (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without

contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

### V.     Discussion

In her brief in support of her motion for summary judgment, plaintiff raises the following challenges to the ALJ's determination: 1) the ALJ's RFC assessment was not supported by substantial evidence; 2) the ALJ proposed a hypothetical question to the VE that did not properly reflect her limitations of record; and 3) the ALJ incorrectly concluded that plaintiff's subjective account of her pain and limitations was not totally credible. The Commissioner argues that there is substantial evidence to support the ALJ's finding that plaintiff retained the RFC to return to her previous work.

Plaintiff first claims that the ALJ's assessment of her RFC failed to include plaintiff's limitations with regard to reaching in any direction on a repetitive basis because of the problems with her right shoulder. In support thereof, she claims that the ALJ did not give Dr. Morgan's medical opinion enough weight and relied too heavily on Dr. Bonier's reports.

While the opinions of the treating physician are entitled to great weight, the ALJ is not required to accept every treating physician's opinion as conclusive. Rather, he must weigh the evidence and determine which sources should be credited and which should be discounted. *Plummer*, 186 F.3d at 249. In light of contradictory medical evidence, the ALJ may even reject the treating physician's opinion, *Morales*, 225 F.3d at 317-318, as long as he explains his rejection. *Adorno*, 40 F.3d at 48.

Plaintiff claims that the ALJ did not afford Dr. Morgan's opinion enough weight. She claims that the medical questionnaire completed by Dr. Morgan on September 9, 2004 should

have been afforded more weight. In that questionnaire, Dr. Morgan opined that plaintiff was not capable of working on a "regular and continuing basis" due to her shoulder injury. However, he left the following section blank that requested medical evidence as to the basis for his opinion. R.224. The ALJ noted that he would not give significant weight to forms that contained no independent medical support. R.17.

The ALJ also noted that the Dr. Shannon's favorable report of plaintiff's progress following her shoulder surgery contradicted Dr. Morgan's opinion, and found Dr. Shannon's opinion to be entitled to more weight because there was medical evidence to support his findings. R.17. The record reflects that on June 2, 2004, Dr. Shannon opined that plaintiff was doing well and recalled that plaintiff stated "she can move her arm wherever she wants and she has good strength and she attributes this to the good therapy that she has been getting" R. 225. He also noted that she had no discomfort on palpation in her shoulder. R.225. The ALJ also found that Dr. Shannon's evaluation of the pain was more decisive because his treatment of her occurred at a later date and showed overall improvement after the surgery. R.18. The ALJ also relied on the opinion of Dr. Bonier, who examined plaintiff on behalf of the State Agency, as further support for his decision that Dr. Shannon's conclusions were entitled to significant weight and that plaintiff was prone to symptom magnification. Plaintiff claims that the ALJ's reliance on Dr. Bonier's report is misplaced because he never mentions problems with plaintiff's shoulder. While the record is unclear as to why Dr. Bonier did not address plaintiff's shoulder problem, the Court finds that even discounting Dr. Bonier's analysis, there still exists substantial evidence to support the ALJ's decision to accord more weight to the opinion of Dr. Shannon than Dr. Morgan's opinion, because Dr. Shannon treated plaintiff for her shoulder condition more

recently.

There exists substantial evidence of record to support the ALJ's assessment of plaintiff's RFC and the ALJ was well within his authority to credit the evidence submitted by Dr. Shannon. The ALJ adequately explained his reasons for according more weight to the opinions of Dr. Shannon and Dr. Bonier than the opinions of Dr. Morgan and the Court will not disturb the Commissioner's findings in that regard because they are supported by substantial evidence.

Plaintiff next claims that the hypothetical posed to the vocational expert did not adequately reflect all of her limitations of record. It is well settled that a hypothetical question must reflect all of the plaintiff's impairments that are supported by the record. *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999). Because this Court has found that the ALJ's assessment of plaintiff's RFC was supported by substantial evidence, this Court finds that the hypothetical posed to the vocational expert reflected all of plaintiff's limitations of record.

Finally, plaintiff claims that the ALJ incorrectly concluded that her subjective account of her pain and limitations was not totally credible.

The ALJ may find that a claimant is not accurately stating the degree of her pain, *see* 20 CFR § 404.1529(c), and may find her testimony not credible. When the ALJ rejects subjective complaints of pain, he must explain his rationale in order for the reviewing court to determine whether the rejection was proper. *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981). Additionally, the explanation must be clear and logical, with details as to why certain statements were discounted. *Schaudeck v. Commissioner of SSA*, 181 F.3d 429 (3d Cir. 1999) (explaining that the ALJ must take all of the evidence into consideration when interpreting claimant's testimony regarding pain).

The ALJ determined that plaintiff's allegations regarding her limitations were not "fully" credible. R. 18. The ALJ did not dispute that plaintiff's impairments were reasonably expected to cause some of the subjective complaint of which she complained; however, the ALJ considered Dr. Bonier's report in which he opined that the patient demonstrated some evidence of symptom magnification. R. 215. The ALJ adequately explained his reasons for discounting some of plaintiff's complaints of pain based upon all of the medical evidence and the opinion of Dr. Bonier. R. 18.

### VI.    Conclusion

The Court finds there is substantial evidence of record to support the ALJ's determination that plaintiff's medical conditions do not prevent her from performing her past relevant work. The Court therefore will grant the Commissioner's motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment in favor of the Commissioner.

An appropriate order will follow.

                                            s/Arthur J. Schwab
                                            Arthur J. Schwab
                                            United States District Judge

cc:    All counsel of record as listed below

Robert G. Yeatts, Esquire
Lewis & Ristvey
689 North Hermitage Road
P.O. Box 1024
Hermitage, PA 16148

Lee Karl, Esquire
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219